ROGER ROY LUTHER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Luther v. Commissioner
Docket No. 7861-85
United States Tax Court
T.C. Memo 1989-534; 1989 Tax Ct. Memo LEXIS 534; 58 T.C.M. (CCH) 276; T.C.M. (RIA) 89534; September 27, 1989
Roger Roy Luther, pro se. Mary E. (Betsy) Pierce, for the respondent. WILLIAMS
MEMORANDUM OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax as follows: Additions to Tax
Year
Income Tax
§ 6651(a)(1) [1]
§ 6653(a)(1)
§ 6653(a)(2)
§ 6654
1981
$  5,468.00
$ 1,367.00
$   273.00
*
$   419.00
1982
27,690.00
6,923.00
1,385.00
**
2,697.00
1983
11,663.00
2,916.00
583.00 ***
712.00
*535 The issues we must decide are: (1) whether petitioner received unreported self-employment income for the years in issue, (2) whether petitioner received taxable income for a discharge of indebtedness in 1982, (3) whether petitioner is liable for investment tax credit recapture in his 1982 tax year, (4) whether petitioner is entitled to an exemption for his wife for 1981, 1982, and 1983 and for his sons for 1983, and (5) whether petitioner is liable for additions to tax. Respondent concedes on brief that petitioner is entitled to dependency exemptions for his two sons in 1981 and 1982. Respondent's proposed stipulation of facts has been accepted as established for purposes of this case, and those facts are so found. Petitioner resided in Park Rapids, Minnesota at the time he filed the petition in this case. Petitioner was married to Ellen D. Luther during the years in issue and had two teenage sons. On November 1, 1976, petitioner purchased real property from Nick and Marjorie Molitor which included a nine-hole golf course, a six-unit motel, a restaurant and bar, a pro shop, and a garage and storage shed. From December 1976 to November 1982, petitioner operated the motel, *536 golf course and restaurant as a sole proprietorship under the name, Sneaky's Pines. Petitioner lived with his family on the property. Sneaky's Pines cafe was open only for dinner, offering a full supper menu. Petitioner and his two sons did the cooking for the cafe, and Ellen Luther was the waitress. In 1981 petitioner made his yearly payment on the purchase money obligation for the golf course of $ 15,000 in cash and paid $ 1,500 to the county in 1981 for a liquor license. On October 27, 1982, petitioner and Ellen D. Luther, by quitclaim deed, conveyed the golf course, including all real and personal property, back to Marjorie I. Molitor. On his 1979 and 1980 Federal income tax returns, petitioner reported the income and expenses for Sneaky's Pines. Petitioner also reported on his 1979 and 1980 Federal income tax returns unused investment tax credits for the golf course. Moreover, petitioner reported the basis and yearly depreciation on their 1979 and 1980 Federal income tax returns for the golf course's real property and personal property as follows: Yearly
Property
Basis
Depreciation
Land
$ 5,000.00
$    - 0 -
Motel
60,000.00
2,000.00
Clubhouse
73,500.00
2,500.00
Metal Garage
10,000.00
666.66
Shop
3,000.00
300.00
Greens
45,000.00
1,800.00
Irrigation System
10,000.00
666.66
Bar Equipment
4,400.00
540.00
Home Living Unit
8,600.00
- 0 -
Kitchen Equipment
9,553.98
869.64
Dining Room Equipment
10,200.00
1,020.00
Club Room Cash Register
400.00
40.00
Grounds Equipment
16,468.00
1,232.00
Swimming Pool
7,000.00
467.00
Improvements
3,000.00
300.00
*537 The depreciation schedules attached to his 1979 and 1980 Federal income tax returns reported an "existing mortgage" of $ 92,000. Petitioner did not maintain or offer at trial any records of the income and expenses associated with the operation of Sneaky's Pines. In the statutory notice of deficiency, respondent allowed petitioner an investment tax credit of $ 4,607 for the 1981 year. Sometime in the early 1980's petitioner purchased land adjacent to his golf course from Charles and Sandra Vikre. In June 1982, he sold the property back to Charles and Sandra Vikre. Petitioner did not offer at trial any records of these transactions. On April 26, 1979, petitioner purchased a Ford tractor with backhoe and cab from North Country Equipment Co. for $ 10,488. The First National Bank of Bemidji financed the purchase of the tractor. Petitioner made monthly payments on the tractor totaling $ 1,258.42 in 1981 and $ 2,753.58 in 1982. In 1981 petitioner purchased a 1981 four-door Buick Century automobile valued at $ 7,525. Petitioner obtained a loan in the amount of $ 3,550 from the First National Bank of Bemidji to purchase the Buick and serviced the loan in the amounts of $ 1,522.83 *538 and $ 2,515.02 in 1981 and 1982, respectively. On February 1, 1982, petitioner assumed a loan in favor of First National Bank of Bemidji in the amount of $ 5,746.99 which was secured by a 1981 Volkswagen pickup with a value of $ 6,575. The terms of the loan required 31 monthly payments of $ 232.13. In 1982 and 1983 the bank received payments on the Volkswagen pickup totaling $ 3,124.07 and $ 2,692.17, respectively. Title to the Volkswagen was transferred to petitioner's name. Petitioner would not reveal the name of the person who transferred title to petitioner in 1982. On November 3, 1980, petitioner purchased 80 acres in Hubbard County, Minnesota for $ 18,000. The payment terms agreed to by petitioner were (1) a down payment of $ 5,200, (2) $ 3,000 on October 25, 1981, and each succeeding October 25 until the purchase price was paid in full, (3) interest on the unpaid balance of 10 percent per annum, and (4) the right to prepay without penalty after February 2, 1982. Petitioner prepaid the outstanding balance of the purchase price in 1982. Petitioner built a house on the 80-acre property in 1982. He wired the house for electricity and built a garage. For the years 1982 *539 and 1983 the Hubbard County property tax statement for petitioner's residence shows new construction on the property valued at $ 9,500 and $ 33,600, respectively. Petitioner has no records of his expenses in building or maintaining his house. Petitioner did not file his 1981, 1982, and 1983 Federal income tax returns or Minnesota State income tax returns. Accordingly, respondent prepared a substitute return for petitioners for each of the years in issue using married, filing separately filing status. Respondent, using a source and application of funds analysis, determined that petitioner had self-employment income in 1981, 1982, and 1983 of $ 26,626, $ 24,876, and $ 32,400. Respondent also determined that when petitioner conveyed Sneaky's Pines by quitclaim deed to Marjorie Molitor, he realized income from the discharge of indebtedness. Finally, respondent determined that petitioner's tax liability for 1982 is increased by the recapture of previously allowed investment tax credit. At trial, petitioner began his case with threadbare tax protestor arguments. The Court warned petitioner that his tax protestor arguments hindered the presentation of the merits of his case and that *540 if he persisted with these arguments we would award damages to the United States pursuant to section 6673. Petitioner then proceeded to present his evidence without rhetoric. However, on brief petitioner returned to his tired, discredited arguments and failed to argue the merits of his case. We conclude, therefore, that he has abandoned his arguments for lack of merit. ; . Petitioner's tax protestor arguments have been repeatedly rejected by this Court as groundless, frivolous and without merit. E.g., ; . We see no need to repeat those discussions here. We hold, therefore, that petitioner is liable for Federal income tax and additions to tax as determined by respondent except for respondent's concessions in respect of the dependency exemptions for his two sons in 1981 and 1982. Moreover, we award damages to the United States and against petitioner of $ 2,000 pursuant to section 6673 for maintaining claims *541 he knew to be groundless and frivolous in the face of our explicit warnings. Because of concessions, Decision will be entered pursuant to Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated. * 50% of the interest due on $ 5,468.00. ** 50% of the interest due on $ 27,690.00. *** 50% of the interest due on $ 11,663.00.↩